UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PROFESSIONAL INSTRUMENT<br>COURSES, INC.,<br><br>              Plaintiff,<br><br>V.<br><br>WORLD LOGISTICS INC. d/b/a<br>ACCELERATED FLIGHT AND<br>INSTRUMENT TRAINING,<br>and WILLIAM F. FISCHER,<br><br><br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>AUGUST 23, 2005 |

## COMPLAINT WITH JURY DEMAND

The plaintiff, Professional Instrument Courses, Inc. ("Plaintiff" or "PIC"), by and through its undersigned counsel, McCarter & English, LLP, as and for its Complaint against the defendants, World Logistics Inc. d/b/a Accelerated Flight and Instrument Training (hereinafter, "AFIT"), and William F. Fischer ("Fischer") (collectively, "Defendants"), respectfully alleges as follows:

### THE PARTIES

1. PIC is a Connecticut corporation with its principal place of business at Aviation Center, 30 Plains Road, Essex, Connecticut 06426.

2. AFIT is the fictitious business name of a Delaware corporation known as World Logistics Inc. AFIT has a principal place of business at 3334 East Coast Highway, Suite 315, Corona Del Mar, California 92625.

3. Fischer is a natural person residing at 1209 Ocean Avenue, Seal, California. Fischer is the CEO and lead instructor for AFIT.

## JURISDICTION AND VENUE

4.     This is an action for copyright infringement, breach of contract, and unfair trade practices. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b), and 1367(a).

5.     This court has personal jurisdiction over AFIT and Fischer because they have transacted business in the State of Connecticut, engaged in tortious conduct in the State of Connecticut, engaged in tortious conduct outside the State of Connecticut which caused injury to persons or property within the State of Connecticut and which they should reasonably have expected to have consequences in the State of Connecticut, and they derive substantial revenue from interstate commerce.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to PIC's claim occurred in the District of Connecticut.

## FACTUAL BACKGROUND

### PIC's Development of Its Copyrighted Works

7.     Since 1980, PIC has been engaged in the business of providing instrument training to airplane pilots. John W. O'Brien ("Mr. O'Brien") is the President of PIC.

8.     In the early 1980s, PIC independently developed a written instruction manual entitled <u>The Instrument Flight Training Manual as Developed by Professional Instrument Courses, Inc.</u> (the "Training Manual"), which PIC uses in providing instrument training to airplane pilots. The Training Manual was based on PIC's unique method of providing instrument training to pilots.

9.     PIC owns all right, title and interest in and to the Training Manual and all

associated copyright rights. The Training Manual was first published in 1985. The Training Manual containing a © indicating its status as a copyrighted work.

10. From 1985 to the present, PIC has extensively advertised, marketed, promoted, sold, and otherwise utilized the Training Manual throughout the United States, including the State of Connecticut and the State of California, and the Training Manual has become a marketing success.

11. Additionally, since the 1990s, PIC has maintained an internet website that provides information regarding the services that PIC provides. PIC's website contains a presentation that explains the courses PIC offers, details the subject areas covered by the courses, and answers "frequently asked questions."

### PIC's Contract with Fischer

12. On or about September 10, 1997, Fischer and PIC entered into an Independent Contractor Agreement ("Agreement"). This Agreement was signed by both parties in the State of Connecticut. (A copy of the Agreement is attached hereto as Exhibit A.)

13. Pursuant to the Agreement, Fischer agreed to teach instrument flight training courses to PIC's customers. The Agreement required Fischer to teach these instrument flight training courses according to the PIC curriculum, as set forth in the Training Manual.

14. After the execution of the Agreement, Fischer received several days of training from PIC in the State of Connecticut.

15. Additionally, after the execution of the Agreement, PIC provided Fischer with copies of PIC's proprietary course materials, including the Training Manual, a second PIC Training Manual, and the Instructor's Handbook.

16. The Agreement provided that either PIC or Fischer could terminate the

Agreement at any time upon reasonable notice. Upon termination, the Agreement required Fischer to return to PIC all copies of PIC's course materials, including the Training Manual, in his possession.

### PIC Learns That Fischer Works For AFIT and Terminates the Agreement

17.     In March 2003, Aircraft Owners and Pilots Association ("AOPA") Pilot magazine published an article about PIC and its curriculum (the "AOPA Article"). The article contained a picture of Fischer, several quotes from Fischer, and identified Fischer as one of PIC's instructors.

18.     In or about June 2004, Mr. O'Brien learned of the existence of AFIT, another company in the business of providing instrument training to airplane pilots. Mr. O'Brien decided to look at AFIT's internet website, at which time he discovered that AFIT's website contained a reproduction of the AOPA Article. However, on its website, AFIT misrepresented the article, claiming that it was written about AFIT. Moreover, in its reproduction of the article, AFIT represented Fischer as AFIT's "Chief Pilot."

19.     After making this discovery, PIC provided notice to Fischer that PIC was terminating the Agreement.

20.     Since the termination of the Agreement last year, Fischer has failed to return to PIC any copies of PIC's proprietary course materials. Upon information and belief, Fischer provided copies of the Training Manual and the other proprietary course materials to AFIT.

### PIC Informs AFIT That AFIT Is Improperly Copying PIC's Website and AFIT Agrees to Stop Copying

21.     In addition to finding the AOPA Article on AFIT's website, Mr. O'Brien discovered in June 2004 that AFIT's website contained a Flash Presentation that was nearly identical to the material contained on PIC's website. The only substantive differences between the two websites were that the Flash Presentation on AFIT's website possessed AFIT's name and

4

*contact information.*

22.     After making this discovery, on or about June 3, 2004, Mr. O'Brien telephoned AFIT and spoke to someone who identified himself as Tony Mannoulti. Mr. O'Brien explained to Mannoulti that AFIT was infringing on PIC's copyrights by copying PIC's website. Mr. O'Brien requested that AFIT change the Flash Presentation and remove the AOPA Article from its website. During the telephone conversation, Mannoulti agreed to change the Flash Presentation and remove the AOPA Article.

23.     In a letter sent from Mannoulti to Mr. O'Brien at PIC's office in Connecticut, dated June 3, 2004, Mannoulti reiterated that the Flash Presentation would be changed and that the AOPA Article would be removed. In the letter, Mannoulti recognized PIC "as the leader in onsite training."

24.     Additionally, in a letter sent from Mannoulti to Mr. O'Brien at PIC's office in Connecticut, dated June 7, 2004, Mannoulti explained that AFIT's website had been changed in accordance with the issues discussed during Mr. O'Brien's telephone conversation with Mannoulti.

## AFIT Continues Its Improper Conduct and Utilizes and Commercializes PIC's Copyrighted Training Manual

25.     Following the foregoing correspondence between Mr. O'Brien and Mannoulti in June 2004, AFIT changed the Flash Presentation contained on its website. However, even after the changes, Mr. O'Brien discovered that AFIT's new Flash Presentation contained many phrases and passages identical to PIC's website and other advertising media.

26.     Additionally, over the past six months, PIC noticed an accelerating presence of AFIT on the Internet that appeared to be accomplished by the purchase of "AdWords" from Internet search engines such as Google. In 2005, Mr. O'Brien conducted an internet search of

his own company's name by entering the words "Professional Instrument Courses," into the Google search engine. As a result of this search of PIC's company name, Mr. O'Brien learned that AFIT's website was a sponsored link and occupied the first position in Google's search results.

27. Additionally, in light of Fischer's failure to return his copies of the Training Manual to PIC, PIC suspected that AFIT was utilizing the Training Manual and other proprietary course materials in its own courses for its own monetary gain.

28. In or about July 2005, an employee of PIC called AFIT posing as a potential customer. The PIC employee insisted on obtaining a copy of the course material in advance of the course. After booking a training date and providing AFIT with a $500 deposit, the PIC employee received from AFIT via Priority Mail shipped into the State of Connecticut, inter alia, a training schedule, a training manual, and Fischer's business card.

29. The training schedule sent by AFIT was substantially similar to the one contained in PIC's Instructor Training Manual.

30. In addition, the 287-page training manual sent by AFIT was nearly identical to the Training Manual. In fact, on Page 77 of both manuals, there is a reference to the PIC training course.

31. Additionally, the only differences between the training manuals are that: (1) AFIT's version omits the first six pages of the Training Manual, which contain the copyright and publishing information and an introduction by Peter Dogan, the founder of PIC and writer of the first edition of the Training Manual; and (2) AFIT's version omits references to PIC on Page 58 and Page 65.

32. The AFIT training manual is in fact nothing more than a photocopy of almost all

of PIC's copyrighted Training Manual.

33. Upon information and belief, AFIT is and has been distributing to its customers and utilizing in its training courses copies of the Training Manual since at least 2004.

## FIRST COUNT (AGAINST BOTH DEFENDANTS)
### (Copyright Infringement)

34. PIC hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 33 as though fully set forth herein.

35. The Training Manual is a copyrighted work owned by PIC and to which PIC has exclusive rights of reproduction.

36. Defendants have willfully infringed upon PIC's exclusive rights in its copyrighted works by reproducing, distributing, displaying, and otherwise utilizing the Training Manual, without authorization from the copyright owner, PIC, in violation of 17 U.S.C. § 501.

37. PIC has suffered monetary damages based on Defendants' willful infringement of PIC's copyright rights and PIC is entitled to recover its actual damages and Defendants' profits attributable to their copyright infringement or statutory damages.

38. Defendants' infringement of PIC's copyright rights was preconceived, deliberate, and willful, entitling PIC to recovery of enhanced statutory damages, and its costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505.

39. Additionally, the continuing infringement by Defendants of PIC's copyright rights is causing and will continue to cause PIC irreparable harm for which it has no adequate remedy at law.

40. PIC is entitled to obtain preliminary and permanent injunctive relief with respect to Defendants' infringing conduct pursuant to 17 U.S.C. § 502(a).

## SECOND COUNT (AGAINST BOTH DEFENDANTS)
### (Violation of Connecticut Unfair Trade Practices Act)

41. PIC hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 40 as though fully set forth herein.

42. At all times material to this action, Defendants were engaged in trade or commerce in the State of Connecticut within the meaning of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a, et. seq.

43. Defendants are all "persons" within the meaning of Conn. Gen. Stat. § 42-110a.

44. By the acts alleged herein, Defendants have engaged in unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of trade or commerce in violation of CUTPA, Conn. Gen. Stat. § 42-110b.

45. As a direct and proximate result of Defendants' actions and conduct, PIC has suffered and continues to suffer an economic loss.

46. As a result of the actions of Defendants alleged herein, PIC has suffered an ascertainable loss.

47. As a result of the foregoing, PIC is entitled to damages, punitive damages and an award of attorneys' fees, all as provided pursuant to Conn. Gen. Stat. § 42-110g.

48. A copy of this Complaint is being mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut pursuant to Conn. Gen. Stat. § 42-110g(c).

## THIRD COUNT (AGAINST BOTH DEFENDANTS)
### (Violation of California Unfair Competition Law)

49. PIC hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 48 as though fully set forth herein.

50. At all times material to this action, Defendants were engaged in trade or commerce in the State of California within the meaning of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et. seq.

51. Defendants are all "persons" within the meaning of Cal. Bus. & Prof. Code § 17201.

52. By the acts alleged herein, Defendants have engaged in unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of trade or commerce in violation of UCL, Cal. Bus. & Prof. Code § 17203.

53. As a direct and proximate result of Defendants' actions and conduct, PIC has suffered and continues to suffer an economic loss.

54. As a result of the actions of Defendants alleged herein, PIC has suffered an ascertainable loss.

55. As a result of the foregoing, PIC is entitled to damages, punitive damages and an award of attorneys' fees.

### FOURTH COUNT (AGAINST FISCHER)
### (Breach of Contract)

56. PIC hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 55 as set forth herein.

57. The Agreement constitutes a valid and enforceable contract between PIC and Fischer.

58. Upon the termination of the Agreement, Fischer was required to return to PIC all copies of the Training Manual in his possession.

59. To date, despite the termination of the Agreement, Fischer has not returned any copies of the Training Manual to PIC. In fact, upon information and belief, Fischer provided

copies of the Training Manual to AFIT. Additionally, upon information and belief, Fischer utilizes the Training Manual in teaching courses to AFIT's customers.

60.   As a result of the foregoing, Fischer has breached his contract with PIC, and PIC has incurred monetary damages.

WHEREFORE, the plaintiff, Professional Instrument Courses, Inc., prays that judgment be entered in its favor and for the following relief:

(1)   Damages in amount to be determined at trial, including:

   (a)   PIC's actual damages;

   (b)   AFIT's and Fischer's profits with respect to their infringing conduct; and

   (c)   Statutory damages pursuant to 17 U.S.C.A. § 504(c);

(2)   Punitive damages pursuant to Conn. Gen. Stat. 42-110g;

(3)   Costs and attorneys' fees pursuant to 17 U.S.C. § 505, Conn. Gen. Stat. § 42-110g, and Cal. Civ. Proc. Code § 1021.5;

(4)   Preliminary and permanent injunctive relief with respect to AFIT's and Fischer's wrongful conduct as follows:

   (a)   An order restraining AFIT and Fischer, and AFIT's parents, predecessors, successors, assigns, subsidiaries, affiliates, and all present and former directors, officers, partners, employees, agents, or other representatives from copying, reproducing, distributing, displaying, commercializing, and/or otherwise utilizing any portion of <u>The Instrument Flight Training Manual as Developed by Professional Instrument Courses, Inc.</u>, or any other proprietary materials belonging to PIC;

   (b)   An order restraining AFIT and Fischer, and AFIT's parents, predecessors, successors, assigns, subsidiaries, affiliates, and all present and former directors, officers,

partners, employees, agents, or other representatives from advertising, promoting, or referring to any portion of <u>The Instrument Flight Training Manual as Developed by Professional Instrument Courses, Inc.</u>, or any other proprietary materials belonging to PIC; and

(c)     An order requiring AFIT and Fischer, and AFIT's parents, predecessors, successors, assigns, subsidiaries, affiliates, and all present and former directors, officers, partners, employees, agents, or other representatives, to return to PIC or all copies of any portion of <u>The Instrument Flight Training Manual as Developed by Professional Instrument Courses, Inc.</u>, or any other proprietary materials belonging to PIC;

(d)     An order requiring AFIT and Fischer and AFIT's parents, predecessors, successors, assigns, subsidiaries, affiliates, and all present and former directors, officers, partners, employees, agents, or other representatives, to cease and desist from any further attempts to trade on PIC's name, reputation or materials, including requiring AFIT to stop using PIC's name as "Adwords" for any internet search engine.

(5)     An order impounding and/or destroying all infringing articles pursuant to 17 U.S.C. § 503; and

(6)     Interest, costs, and such other relief as the Court may deem just and equitable.

**JURY TRIAL DEMANDED**

Dated: August 23, 2005
       Hartford, Connecticut

                                THE PLAINTIFF,
                                PROFESSIONAL INSTRUMENT COURSES, INC.

                                By: _____
                                   William H. Bright, Jr.
                                   Federal Bar No.: ct 02494
                                   Andrew D. Moore
                                   Federal Bar No.: ct 22281
                                   McCarter & English, LLP
                                   CityPlace I
                                   185 Asylum Street
                                   Hartford, Connecticut 06103
                                   Tel.: (860) 275-6700
                                   Fax: (860) 724-3397

HARTFORD: 645870.03

A

## Independent Contractor Agreement

THIS AGREEMENT made this <u>10th day of September, 1997,</u> by and between PROFESSIONAL INSTRUMENT COURSES, INC., with an office in Essex, Connecticut (hereinafter called "P.I.C."), and William F. Fischer, 2918 Soscol Avenue #17, Napa, CA 94558 (hereinafter called "Contractor").

WITNESSETH

WHEREAS, P.I.C. and Contractor are both engaged in the business of providing instrument flight training courses throughout the United States and whereas P.I.C. desires to expand its market penetration into such areas where Contractor is willing to perform such services, and Contractor desires to increase its business and/or corporate profits by entering into an arrangement to provide instrument flight training courses to P.I.C. customers as an independent contractor to P.I.C.;

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable considerations, P.I.C. agrees to engage Contractor, and Contractor agrees to provide flight instruction and related services for P.I.C. upon the following terms and conditions:

1. Contractor shall (individually and/or through its designate) provide instrument flight training courses, hereinafter called "course"; and,

2. Contractor hereby represents that he, and/or his designate has attained and will maintain during the period of his engagement as an independent contractor/instructor all flight certifications required by any law, regulation or rule relating to flight instruction and that he, and/or his designate will conduct himself in compliance with all applicable Federal Aviation Regulations.

3. Contractor agrees to teach the course according to the P.I.C. curriculum as set forth in the P.I.C. Training Manual. Said Training Manual is made a part hereof by reference. Upon termination of this contract, all copies of the P.I.C. Training Manual in possession of Contractor shall be returned forthwith to P.I.C.

4. P.I.C. agrees to pay Contractor at the rate of <u>$107.00</u> per day worked, plus expenses for travel and lodging.

5. Either P.I.C. or Contractor may terminate this Agreement at any time provided a reasonable notice period is given. In the event that this agreement is terminated it is understood and agreed that Contractor's right to compensation, as herein provided, shall terminate on the date of termination of this agreement.

6. Contractor (individually, and/or through its designate) agrees to adhere to the highest standards of personal conduct and appearance while performing on P.I.C. engagements as set forth under the terms and conditions in this agreement.

7. Contractor agrees not to interfere with the contracts and agreements of P.I.C. with its customers for whom the Contractor has been engaged to provide services for P.I.C.

8. Contractor agrees to collect from each client, in advance, all fees and expenses due to P.I.C. Contractor shall not be compensated, nor reimbursed for expenses, for any work for which he has not collected.

9. It is understood that no authority has been granted to Contractor and none is possessed to sign or endorse P.I.C.'s name on any commercial paper, contracts, advertisements, or instrument of any nature, nor to contract any debt or enter into any obligation, either express or implied, binding P.I.C. to the payment of money or otherwise.

10. Each of the clauses contained herein shall be considered independent from the others. The illegality, unenforceability or rendering void by court action or otherwise of any clause herein shall not affect the remaining clauses and the balance of the Agreement shall continue in full force and effect. This contract is to be construed, enforced and interpreted under and pursuant to the laws of the State of Connecticut.

11. Contractor shall retain exclusive control as to the manner and means of conducting work while performing on P.I.C. engagements (except as previously noted in paragraph 3 above).

12. Contractor represents that he is an independent contractor qualified to perform this Agreement; that he is exempt from coverage under the federal wage and hour laws and is in the "exempt" category under the Fair Labor Standards Act. Contractor will be solely and entirely responsible for any taxes due any government or other authority, including but not limited to: withholding, and social security taxes.

13. Contractor holds P.I.C. harmless from, and will indemnify P.I.C. against, claims arising for himself, his agents, employees, servants, and subcontractors during the performance of this contract under any applicable workers compensation, wage and hour, or unemployment laws, rules or regulations.

14. No partnership, joint venture or employer-employee relationship is formed hereby or by contractor's performance hereof. Contractor is and will remain an independent contractor unless and until an expressed written agreement to the contrary is executed by both parties hereto.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals this <u>10th day of September, 1997.</u>

WITNESSED:

_____          _____ L.S.
                                         John W. O'Brien, P.I.C., Inc.

_____          _____ L.S.
                                                    Contractor